```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                       WESTERN DIVISION
```

___

JANICE HAMPTON,

      Plaintiff,

  v.

                               No.    18-1191-STA-dkv

MADISON COUNTY,
TENNESSEE

      Defendant.

___

**REPORT AND RECOMMENDATION ON DEFENDANT'S PARTIAL MOTION TO DISMISS**
___

On October 1, 2018, Janice Hampton ("Hampton") filed a *pro se* complaint against Madison County Juvenile Court Services alleging violations of the Age in Employment Discrimination Act, 29 U.S.C. § 621, *et seq.* (the "ADEA") and the Americans with Disabilities Act, 29 U.S.C. § 12112, *et seq.* (the "ADA"). (Compl., ECF No. 1.) The presiding district judge entered an order on April 19, 2019, adopting the previously presiding magistrate judge's order directing Hampton to file an amended complaint with a more complete recitation of the facts. (Order, ECF No. 9.) Hampton subsequently filed a sixteen-page, handwritten amended complaint on May 21, 2019, asserting claims pursuant to the ADEA, the ADA, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). (Am. Compl., ECF No. 12.)

On October 8, 2019, Madison County Juvenile Court Services filed a motion to dismiss, or in the alternative, to require Hampton to amend her complaint appropriately and serve the proper party, Madison County, Tennessee ("Madison County"). (First Mot. to Dismiss, ECF No. 24.) Subsequently, on October 18, 2019, Hampton filed a motion to amend her complaint to change the defendant to Madison County. (Pl.'s Mot. to Am., ECF No. 25.) On November 1, 2019, this court denied the motion to dismiss, but granted Madison County Juvenile Court Service's request to require Hampton to amend her complaint to substitute the correct defendant and Hampton's motion to amend her complaint to the correct defendant. (Order, ECF No. 31.) When Hampton failed to do so, this court, on March 4, 2020, entered an order directing the clerk's office to substitute Madison County as the proper party. (Order, ECF No. 48.) Hampton's amended complaint, (ECF No. 12) filed on May 21, 2019, however, remains the operative complaint. Madison County filed its answer to Hampton's amended complaint on March 16, 2020. (Ans., ECF No. 50.)

Now before the court is Madison County's motion for partial dismissal filed on March 16, 2020, seeking dismissal of Hampton's Title VII claims for failure to exhaust administrative remedies and of other claims first raised in a 2016 EEOC charge as untimely. (Mot. to Dismiss, ECF No. 49.) Hampton did not respond. For the foregoing reasons, it is recommended that Madison County's motion

2

be granted.

## I.   PROPOSED FINDINGS OF FACT

Hampton was employed from January 18, 1994 until April 4, 2018 as a Juvenile Court Intake Counselor for Juvenile Court Services in Madison County, Tennessee. (Separation Notice, ECF No. 12-1.) She alleges violations of Title VII, the ADEA, and the ADA in her amended complaint. (Am. Compl., ECF No. 12.)

As to her Title VII claims, Hampton asserts that she was discriminated against because of her sex when male employees received higher salaries, promotions, and raises. Hampton first alleges that she was denied a raise after being told she would receive one. (*Id.* 1-2.) Hampton states that the reason given for the denial was lack of additional funding. (*Id.* at 2.) Several months later, however, Hampton contends that several raises were given to male employees and an additional male employee was hired at a twenty-four-dollar hourly rate. (*Id.*) Hampton states that this new male employee came in with less education, but at a higher hourly wage than her. (*Id.*) Hampton also alleges that she was required to work additional hours without pay. (*Id.*)

Hampton alleges she was denied a promotion for a supervisor position. (*Id.*) According to Hampton, a male employee, with less experience and education, was given the position because he was "friends with an ex-director's husband." (*Id.*) Hampton was additionally denied a position as a director. (*Id.* at 3.) Hampton

3

contends that she met and exceeded the qualifications, but the position was filled by someone outside of Juvenile Court Services. (*Id.*) Related to these claims is Hampton's assertion that promotions were given without the job being posted "as required." (*Id.* at 2.)

Hampton also alleges that she was subjected to discrimination on the basis of her race. Hampton contends that she worked in the Intake Department with two Personnel Director white females. (*Id.* at 2-3.) Hampton is black. (*Id.* at 3.) Hampton claims that raises were given to the two Personnel Director white employees, each of whom do not have college degrees. (*Id.*)

Additionally, Hampton asserts that she was approached by Court Services Director, Amy Jones ("Director Jones"), for a favor. (*Id.*) Specifically, Director Jones asked Hampton to use her position on the school board to connect the Juvenile Court Services with the "Star," to allow Juvenile Court Services access to the Attendance Department website. (*Id.*) According to Hampton, when she refused, Director Jones had other employees "come against her" in an effort to have Hampton change her mind. (*Id.* at 3-4.)

Lastly, Hampton contends that when she was originally hired in 1994, she was considered a full-time employee with the Madison County government. (*Id.* at 4.) According to Hampton, she was later informed that she would be changed to a part-time county employee, with a grant covering the remainder of her salary. (*Id.*)

4

When Hampton questioned this, she was told she was hired "like that." (*Id.*)

Regarding Hampton's ADEA claims, Hampton states that she is fifty-seven years old and was denied certain promotions and not given certain training that younger employees were given. (*Id.* at 5.) Hampton contends that, although she is well educated and has her master's degree, she did not receive proper raises during her employment. (*Id.*) Hampton further contends that after coming back from leave pursuant to the Family Medical Leave Act (the "FMLA"), she was assigned to the Madison County Detention Center.[1] (*Id.*) According to Hampton, she was placed on part-time duty as opposed to full time and was reassigned with a lower hourly rate as opposed to her original salary. (*Id.*)

As to Hampton's ADA claim, Hampton alleges that she was denied a reasonable accommodation and discriminated against on the basis of her disabilities. Hampton explains that, as an Intake Counselor, a majority of her time is spent on the computer. (*Id.* at 6.) According to Hampton, she began having issues with her right hand and wrist. (*Id.*) In November of 2015, Hampton began experiencing more severe pressure in her wrist and went to her supervisor, Greg Perry ("Perry"), and informed him that she needed to go to the doctor for the pain. (*Id.*) Eventually, after seeing

---

[1] Later in her complaint, Hampton contends that she was denied FMLA leave. (Am. Compl. 13, ECF No. 12.)

5

an orthopedic specialist, Hampton was told she had carpal tunnel. (*Id.*) Hampton was later diagnosed with diabetes. (*Id.* at 7.) In April of 2016, Hampton had surgery to help with her carpal tunnel. (*Id.*)

Hampton alleges that she was denied reasonable accommodations at work for her carpel tunnel. (*Id.*) Hampton states that she specifically asked for a "dragon software" to help assist with her typing. (*Id.*) She was never given that accommodation. (*Id.*) According to Hampton, Perry allowed her to use his son's recorder. (*Id.*) Hampton, however, states that this was ineffective, and she had to continue to type. (*Id.*)

Hampton further states that the doctors she saw for her carpel tunnel were doctors approved by Madison County, but that Madison County refused to accept the recommendations that Hampton's carpel tunnel was work-related. (*Id.* at 8.) According to Hampton, Madison County argued that her carpel tunnel was a result of her diabetes, and thus not work-related. (*Id.*) Hampton contends that she was not diagnosed with diabetes prior to her carpel tunnel. (*Id.*) A letter from Tim Sweo, MD, at Sports Orthopedics & Spines dated January 15, 2016 states that Hampton "has nerve conduction positive for carpal tunnel syndrome . . . [Hampton] has no other significant risk factors for carpal tunnel syndrome, . . . [it is believed] her carpal tunnel syndrome developed from her occupation." (Jan. 15, 2016 Letter, ECF No. 12-1.)

6

Hampton also blames Madison County for the severity of her carpel tunnel. (*Id.*) According to Hampton, had Madison County scheduled her appointment with an approved physician in a timely manner, her carpel tunnel would not have reached its severe stage and she would not have had to independently seek medical attention. (*Id.*) Hampton states that when she contacted the workers compensation department about seeing a physician, they neglected to schedule her an appointment. (*Id.*) Apparently, Hampton was told this delay was a result of Juvenile Court Services failing to inform the workers compensation department. (*Id.* at 9.) As a result of her employer's actions, Hampton states that she "accumulated" stress and pain and her doctor "had to take [her] off work." (*Id.*)

Hampton contends that during the time she was seeking medical attention, asking for reasonable accommodation, and having surgery, she was mistreated by Madison County. (*Id.*) According to Hampton, she was refused certain requests for accommodation such as an arm rest and the dragon software. (*Id.* at 9.) Hampton states that she was also given additional clients, making her caseload heavier, and was told "why don't you just quit." (*Id.*) Hampton contends she was isolated and not informed of any trainings or other activities. (*Id.* at 9, 11.)

After the surgery and upon returning to work, Hampton states that she was refused doctor's appointments. (*Id.* at 11.) Hampton

7

was "taken off work" from March 16, 2018 and returned on April 19, 2018. (*Id.* at 10.) Attached to Hampton's complaint is a note from Family Health Care of Jackson indicating that Hampton should be excused from March 16, 2018 to April 19, 2018. (Doctor's Excuse, ECF No. 12-1.) Afterwards, Director Jones told Hampton that she did not have any more time to take off. (*Id.* at 11.) When Hampton contacted the Personnel Director, Tony Personnel Director White ("Personnel Director White"), he informed Hampton that if she took off any more time, she would be fired. (*Id.*) As a result, Hampton missed several doctor's appointments. (*Id.*)

Additionally, Hampton contends that in March of 2018, she was called into Director Jones's office regarding a client not being helped on a day which Hampton was at the doctor. (*Id.* at 13.) Hampton told Director Jones that she had not scheduled a client on that day and never saw an intake appointment on her calendar. (*Id.*) According to Hampton, the confrontation escalated when Director Jones stood up, got in her face, and told her to leave the office before she was fired and that if she said another word, she would be fired. (*Id.* at 10, 14.)

Hampton attached a letter from Director Jones summarizing the events, which apparently occurred on March 12, 2018. (Mar. 12, 2018 Letter, ECF No. 12-1.) The letter states that Director Jones received an email from Hampton stating she was leaving to go to the doctor, but she did not see the message until later in the

8

day. (*Id.*) According to Director Jones, she was called by another employee who stated that Hampton had a client in the lobby but was not in the building. (*Id.*) After Hampton did not answer the phone, Director Jones went back to the office and saw the client. (*Id.*) According to Director Jones, the meeting was set up by Hampton and was never rescheduled, canceled, or otherwise changed. (*Id.*) Hampton was warned that because this was the second instance in less than a month that Hampton failed to appear at a scheduled intake, she was being placed on a six-month probationary period, and that any failure to perform her job in a satisfactory manner may result in termination. (*Id.*) This letter, however, is not signed by Hampton acknowledging that she received it after it was written. (*Id.*) A calendar that Hampton attached shows that she had a 9:30 AM appointment labeled "Other," but did not have an intake meeting scheduled. (Calendar Entry, ECF No. 12-1.)

According to Hampton, the work environment became hostile, with employees coming to her door and "rolling their eyes, not speaking or engaging with her at all . . . unless it involved a client." (Am. Compl. 11, ECF No. 12.) Eventually, Hampton was terminated on April 4, 2018. (*Id.* at 12.) According to her separation letter, the reason for Hampton's termination was "threats and accusations against co-workers which result in co-workers being very concerned for their safety." (Separation Letter, ECF No. 12-1.) Hampton states she was called in from

9

Juvenile Court to Juvenile Court Services to meet Personnel Director White. (Am. Compl. at 12, ECF No. 12.) Personnel Director White had two sheriff deputies escort her out of the building. (*Id.*)

Hampton alleges that she was retaliated against after making complaints to the EEOC. (*Id.*)

Attached to Hampton's original complaint, and relevant to Madison County's motion, are Hampton's EEOC documents. Hampton's original charge of discrimination includes claims of retaliation, age, and disability discrimination. (June 2018 Charge, ECF No. 1-1.) Although Hampton does not set forth any claim for relief in her amended complaint, Hampton sought as relief in her original complaint to be reinstated by Madison County, moved to a different department, back pay, and compensatory damages. (Compl. 6, ECF No. 1.)

## II. PROPOSED CONCLUSIONS OF LAW

A. <u>Legal Standard</u>

To survive a Rule 12(b)(6) dismissal following the United States Supreme Court's opinions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must "'contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678). The court "construes that

complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3. ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice of the nature of the claim, but also 'grounds' on which the claim rests.").

    The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, makes clear that Title VII plaintiffs are not required to plead the elements of a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). 534 U.S. 506, 508 (2002)(including the plaintiff's ADEA claim); *see also Morgan v. St. Francis Hosp.*, 2019 WL 5432041, at *1-2 (6th Cir. Oct. 3, 2019)(applying *Swierkiewicz* to a claim under the ADA). All that is required is that the complaint satisfies Rule 8(a)'s simplified pleading standard. *Swierkiewicz*, 534 U.S. at 513. Federal Rule of Civil Procedure 8(a) provides in relevant part that a pleading must

11

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "But where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"*Pro se* complaints are to be held to 'less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.")(internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Plier v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to

12

affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

B.  Hampton's Title VII Claims

Madison County's first argument in its motion to dismiss is that any and all of Hampton's Title VII claims should be dismissed for failure to exhaust administrative remedies. (Mem. in Supp. of Mot. to Dismiss, ECF No. 49.) Specifically, Madison County argues that in Hampton's EEOC charge, she only stated claims for retaliation, age, and disability discrimination. (*Id.* at 3-4.)

Title VII contains a charge-filing requirement before filing suit in federal court. 42 U.S.C. § 2000e-5(e)(1). The Supreme Court in *Fort Bend County v. Davis* held that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts." 139 S. Ct. 1843, 1851 (2019). "A Claim processing rule may be 'mandatory in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Id.* at 1849. In Hampton's case, Madison County has timely asserted that she has not exhausted her administrative requirements for her Title VII

13

claims.

An individual alleging discrimination pursuant to Title VII, must first file an administrative charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). Generally, courts have recognized that a plaintiff may not bring claims which were not part of his or her EEOC charge. *See Younis v. Pinnacle Airline, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)("As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge."); *Gipson v. Dep't of Rehab. & Corrs.*, 2020 WL 1233638, at *6 (S.D. Ohio Mar. 13, 2020)(citing 42 U.S.C. § 2000e-5(f)(1)).

Hampton filed her charge of discrimination on June 29, 2018. (June 2018 Charge, ECF No. 1-1.) In it, Hampton asserted that she was retaliated against and discriminated against on the basis of her age and her disability. (*Id.*) Hampton did not assert that she was discriminated against on the bases of her race, color, or sex. (*Id.*) Hampton's claims of race and sex discrimination do not reasonably grow out of her claims of retaliation and discrimination based on age and disability. "[T]he judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). Accordingly, Hampton failed to exhaust her administrative remedies as to her Title VII claims. As such, it is recommended that Madison County's

14

motion to dismiss be granted in respect to those claims.

C.   Hampton's Claims Contained in her Prior EEOC Charge

Madison County also contends that certain claims contained in Hampton's amended compliant were contained in a prior EEOC charge from February 2016. Madison County argues that these claims must be dismissed because Hampton failed to initiate a lawsuit as to these claims within the ninety-day time limitation after being issued a notice of right to sue. (Mem. in Supp. of Mot. to Dismiss 4, ECF No. 49-1.)

Among the administrative requirements that a plaintiff must meet before filing a suit in federal court is that the plaintiff must initiate his or her lawsuit within ninety days after the EEOC issues a notice of right to sue letter. *See* 42 U.S.C. § 2000e-5(f)(1)(explaining that "within ninety days after the giving of [a notice of right sue] a civil action may be brought against the respondent named in the charge"); *see also Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 559-60 (6th Cir. 2000)(holding that the plaintiff's window of time to file suit closed within ninety days, and thus her judicial complaint was foreclosed).

Hampton states in both her June 2018 EEOC charge and her initial complaint that she filed a prior charge with the EEOC in February 2016 regarding disability discrimination which was dismissed on March 17, 2017. (Compl., ECF No. 1; June 2018 Charge,

15

ECF No. 1-1.)  Madison County contends that Hampton's claims that she was denied access the "company physician" in November or December of 2015 and the alleged failures to provide accommodations for her carpal tunnel between November 2015 to April 2016 were contained in this first, February 2016 EEOC charge.[2]  (Mem. in Supp. of Mot. to Dismiss 4, ECF No. 49-1.)  Hampton's June 2018 EEOC charge contains allegations of disability discrimination, including that she still required surgery due to her disability, that she had complained about certain allegedly discriminatory actions which had not been addressed, and that she was ultimately terminated while she was still on medical leave.  (June 2019 Charge, ECF No. 1-1.)  Hampton filed her original complaint on October 1, 2018 and attached to it the Notice of Right to Sue in her 2018 EEOC charge.  She failed, however, to file suit within 90 days of the dismissal of her 2016 EEOC charge.  Hampton's claims that she was denied access the "company physician" in November or December of 2015 and that Madison County failed to provide accommodations for her carpal tunnel between November 2015 to April 2016 are therefore untimely.  Accordingly, it is recommended that Madison County's motion to dismiss some of Hampton's claims as untimely be granted.

---

[2] The February 2016 charge is not in the record; it is not attached to Hampton's original complaint or Hampton's amended complaint, and it is not attached to Madison County's motion to dismiss.

16

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that Madison County's motion to dismiss be granted.

Respectfully submitted this 23rd day of April 2020.

> s/ Diane K. Vescovo
> DIANE K. VESCOVO
> Chief United States Magistrate Judge

### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.